J. & J. Proctor *vs*. Christopher Webber.

*Windsor,*
August,
18?2

An action of *assumpsit* will lie against corporation on a promissory note or other simple contract, made by their agent, duly authorised to make such contract.

Proctor
*vs.*
Webber.

THIS was an action of *assumpsit* on the following promissory note :—

" I Christopher Webber, as Agent of the Green-Mountain Turnpike Corporation promise to pay J. & J. Proctor the sum of——— dollars.

(Signed) CHRISTOPHER WEBBER,
*Agent of the Green-Mountain Turn-*
*pike Corporation."*

On trial of this case upon the general issue, the counsel for the defendant objected to the giving of the note in evidence to the Jury, for a variance between the note declared on and the note offered in evidence, which objection was overruled by the Judge.

The counsel for the defendant then produced evidence to prove that the note in question was given in satisfaction of a demand in favour of the plaintiffs against the Green-Mountain Turnpike Corporation; and that Webber was the agent of said Corporation, authorised and empowered to settle the aforesaid demand of the plaintiffs, and other demands against said Corporation, and requested the Judge to charge the Jury that said Corporation were liable to pay said note, and that the defendant was not liable in law to pay it. The Judge refused so to charge the Jury, but charged them, that an action of *assumpsit* cannot be maintained against a Corporation, and they found a verdict for the plaintiffs.

The counsel for the defendant, filed a motion for a new trial, upon which the cause came on to be heard the present term.

*Hutchinson* for the defendant. This is an action on a note charging the defendant in his individual capacity. The defence set up is, that the defendant gave the note, as agent of the Green-Mountain Turnpike Corporation—that he gave it for their debt, and declared his agency on the face of the note.

The defence arose in two ways—first, on objection to the reading of the note as evidence to the Jury, and we contended that it

ought to have been excluded, on either of two grounds—first. it is described as the note of the defendant, and it appears on the face of it to be the note of the Corporation. If the plaintiffs would contend, that the defendant is holden, by reason of his attempting to bind the Corporation when he had no power to do it, they should have framed a declaration according to the fact, and given notice to the defendant, and taken upon themselves the burthen of proving that the defendant defrauded the plaintiffs, by palming upon them the note of the Corporation wrongfully. Secondly—if this mode of declaring on the note can be supported, still, as the note, when produced, *prima facie* is not the note of the defendant, but of the Corporation, that *prima facie* appearance should have been done away by proof on the part of the plaintiffs, before the reading of the note.

The second shape in which the defence was presented, and to which the defendant was driven by a failure on the first ground, was, by adducing proof that the defendant was the agent of the Corporation—that the plaintiffs knew it.—That the plaintiffs had sustained damage by the fall of a bridge which the Turnpike Corporation were bound to repair; that the defendant settled these damages by giving the note in question.—That all such prudential concerns of the Corporation were usually attended to by their agents.—That the directors intrusted this particular business with the defendant Webber, as agent of the Corporation.—That the by-laws of the Corporation confer very unlimited powers upon their agents.—That this was all a fair transaction, understood alike by all parties.—And there was no pretence that the Turnpike Corporation ever objected to their liability to pay this note. The decision of the Judge, that on this evidence, the plaintiffs were entitled to recover, cannot be supported by law, and if not by law, surely in no way; for this is clearly an attempt by the plaintiffs to charge the defendant in a way that neither he nor the plaintiffs thought o when the note was given. As the plaintiffs, therefore, are seeking strict law, we will produce authorities to shew that they are not by law entitled to recover.

The case Mann *v.* Chandler, 9 Mass. Rep. 335 was an action on note given by the defendant, as Treasurer of the Dorchester Turnpike Company—his capacity being, as in the present case, stated at the beginning and end of the note. But in that case the

note was so described in the declaration.   In that case, as in the Windsor, present, it was contended that the defendant was not legally au- August, thorised to bind the Corporation,  but the Court decided otherwise, not because the charter or by-laws of said Company expressly con- Proctor ferred any such powers, but the Court said " it cannot be doubted Webber that the Corporation is itself liable—the consideration moved wholly from them.   It is very apparent that the plaintiff did not,  at the time of receiving the notes,  look  to the defendant's personal security.   The whole transaction was on  behalf of the Corporation. Their property is liable, and the defendant's is not."   The same reasoning applies throughout to the present case.   We also cite Hodgson v. Dexter, 1 Cranch 345.—Dexter had given the bond under  his private seal,  but had described himself as secretary at war, and gave the bond for the rent of buildings for the use of government ; and, as it was wholly a government concern, the signature and private seal of Dexter were adjudged not to bind him personally.   We cite also the case Mackbeath v. Haldimand, 1 T. Rep. 172.—The reasoning of the Court  and their decision in this case shew that the plaintiffs cannot maintain the present action against Webber on this note.

*Marsh* for the plaintiffs.   The defendant  by the terms of the note in question, promised as agent, and signed the note as agent of the Green-Mountain Turnpike Corporation, and the question is, whether by this note he bound the Corporation, or himself in his private capacity ; if the former, the action is misconceived, and the defendent is entitled to judgment ; if the latter, judgment must be entered on the verdict.

It would seem that the defendant, by the very terms of the contract, meant to bind, and did bind himself in his individual capacity. The expression is, "I, as agent of  the Green-Mountain Turnpike Corporation,  promise &c."   The promise  is  made by the party signing the note, and does not purport to bind any one else.   The object in using this mode of  expression was to make it appear that it was a contract concerning the affairs of the Turnpike Corporation, and against  which  the Corporation were bound to indemnify the defendant, but still he contracted for and bound himself.

An attorney or agent contracting for his principal, must contract in the principal's name, and must place the principal's name to the

*Windsor*,
August,
1822.

Proctor
*vs.*
Webber.

contract, and his seal, if a seal be required; he cannot otherwise bind the principal. Strange, 705.

If it appear from the terms of the contract to have been the intention of the defendant to bind himself, or if from a proper construction of the terms of the note it is his contract, and binds no one else, he is liable on the contract in his individual capacity.

It is clear that a person may contract for another—that is, bind himself that another shall perform a certain act, as well by simple contract as by specialty. A. may agree that if B. will credit C. he (A.) will be accountable that C. shall pay. Here the trusting of C. is a good consideration, and where the statute of frauds is not in force, the contract would be binding, though made by parol, and if in writing, would be valid notwithstanding the statute. So here, the acknowledgement of value received, and especially the discharge executed by the plaintiffs to the Corporation is a sufficient consideration for a promise by a third person.

In this case, however, the defendant did not contract that a third person should pay, but that he, as agent, would pay : let him pay as agent, and the plaintiffs will be satisfied.

It cannot be seriously contended that this note as such binds the Corporation ; it does not purport to be a contract by them, but another promises for them, or, which is the same thing, as their agent—not that the Corporation shall pay, but that he will pay.

It may be doubted whether a Corporation of this kind, as it can act only by its seal, can make a promissory note by which it would be bound as such, notwithstanding the case, Mann *v.* Chandler, 9 Mass. Rep. 335, which will be more particularly noticed hereafter.

The agents of a Corporation, can bind them for work and labor, at least on a *quantum meruit*, and for materials found on a *quantum valebant*, and, perhaps, an agreement for a particular price by the agent may be evidence that such price is reasonable. But no case is found, except the case above alluded to, where it is held that a Corporation of this kind is bound by a promissory note or other written contract made by its agents, and not under the seal of the Corporation.

Where the seal of the Corporation is affixed by one having a right to affix it, it becomes the deed of the Corporation, and covenant will lie against the Corporation for a breach. So, perhaps a Corporation may be bound by a vote entered of record.

It is not easy to perceive why the agents of such Corporation should have power to bind their principal by a promissory note— power to bind them for such things as are necessary, and to the amount of what such necessaries are worth, is 'all that is needful or safe in the hands of such agents.   They certainly cannot issue notes on any and every speculating project, which would bind the Corporation.   If they can issue notes, why not ever so many, and become *at once a banking institution ?*

*Windsor,*
*August,*
1822.

Proctor
*vs.*
Webber.

To these remarks banking Corporations are an exception, because they are incorporated for the express purpose of issuing notes, and are expressly empowered to issue them.

The authorities all shew that in case of *instruments under seal,* the agent or attorney must act in the name of his principal, and affix the seal of his principal, and if he otherwise execute a sealed instrument, he binds himself, not his principal.   To this effect is the case of Wilks and another *v.* Back, 2 East, 142.   Wilks, by virtue of a power of attorney from his former partner, James Brown, executed a bond of submission of a matter of controversy with Back, and signed the bond in the following manner :

"MATTHIAS  WILKS,   (L. S.)
for JAMES BROWN.
MATTHIAS WILKS.   (L. S.)"

And the bond was sealed and delivered by Wilks for himself and his late partner, Brown, but Brown was not present.   This was adjudged to be the same thing as if he had said ' James Brown, by M. Wilks ;' but it was agreed by all that the attorney must act in the name of the principal.   And, no doubt the tenor of the bond was, ' We, M. Wilks and James Brown, acknowledge ourselves bound, &c.' and in this case many older cases are cited to the same effect, from Ld. Ray, Strange, &c.—So is the case of Appleton *v.* Binks, 5 East 148, where one acting for another, and using his own name and seal, was judged to have rendered himself liable.— So in the case Tippits *v.* Wather et al. 4 Mass. Rep. 595.—The defendants were a committee of the Directors of the Middlesex Turnpike Corporation, and as such entered into a contract with the plaintiff, but they used their own names and seals, and were adjudged personally liable.

So is the law also in the case of executors and administrators. Where an executor conveys real estate of the testator, and cove-

*Windsor*,
August,
1822.

Proctor
*vs.*
Webber.

nants in his capacity of executor, and signs as executor, using the expression, ' witness my hand and seal,' he is holden in his private capacity—Barry *v.* Rush, 1 D. & E. 691. where an administrator had submitted a matter of controversy to arbitration, and covenanted to abide the award, he was held liable in his individual capacity, and could not plead *plene administravit.* So the case Sumner administrator *v.* Williams, 8 Mass. Rep. 196, 207. where the defendants were administrators of Dudley, and had conveyed lands belonging to the estate of the intestate, and covenanted in their capacity of administrators, were held liable in their private capacity by Sewal, J., and Parker, J.—Sedgwick, Justice, contra.

There is another class of cases, where agents acting for the government are not held liable, whether they bind their principal or not; but in all these cases, such agents are excused on the ground of publick policy. In the case of Tippits *v.* Walker and others Parsons, Justice makes the same remark. Mackbeath *v.* Haldimand, 1 D. & E. 172. Hodgdon *v.* Dexter, 1 Cranch 345, 362.

It is difficult to conceive what can distinguish a simple contract, such as a promissory note, *in this respect,* from a sealed instrument. It is certainly no more binding on the Corporation or principal when the agent acts without authority; and if not binding on the principal, and a valuable consideration has passed, no matter from whom or to whom, the agent, if he do not bind the principal, binds himself. And it is not found that any such distinction has been taken except in the case referred to of Mann *v.* Walker, where the defendant gave a note as treasurer of the Dorchester Turnpike Corporation, at the request of the directors of said Corporation, who had directed him to settle by note or otherwise with all persons, to whom the president might give an order for the amount due them. The Court decided that the defendant was not liable, but that the note was good against the Corporation.

It will be noticed that no authority was cited in support of this decision; nor does it appear that the case gained the particular attention either of the counsel or the Court. It is therefore believed that this decision is not much to be relied on as an authority, especially as it is not known to be supported by any prior or subsequent case.—Judge Parsons was not then a member of the Court.

But it is insisted by the defendant's counsel, that the Corporation

had conferred power on the agent to execute the note in the present case, and to render it binding on the Corporation, and relies on the 5th section of the act of incorporation.

This section merely authorises the Corporation to appoint such number of directors or agents to manage the affairs of said Corporation as they may judge proper. But the act no where authorizes the Company to empower their directors or agents to execute promissory notes which shall be binding on the Corporation. The Corporation then could not have conferred any such power on the directors or agents. The terms directors and agents seem to be used in the act as synonymous; but in this case the Corporation appointed directors, and an agent also. If I am correct in the construction given to this section of the act, the Corporation could not appoint both directors and agent; and if they appointed several directors, a majority of them only could act. Had they appointed only one, he might have done the whole business; but having appointed several, one could not act alone.

But it is said that the directors requested the defendant, as the agent of the Corporation, to settle the demand of the plaintiffs against the Corporation; but the directors had no authority to delegate their power to any other person or persons; but in doing this business it would seem that the defendant was the agent of the directors and not of the Corporation.

In the case Tippits v. Walker and others, before cited, the defendants were a committee of the directors, and it was decided by the Court that the directors could not delegate any authority to a committee, and, therefore, the committee bound themselves in their private capacity.

As the Corporation had in this case both directors and an agent, it may be asked in which was the power of managing the affairs of the Corporation lodged?—Was it in the directors or agent? or had each paramount authority? Was the consent of the directors necessary to the validity of the acts of the agent? or could he act without or against their directions? On the whole, in any view which can be taken of this case, the Corporation cannot be liable to pay the note in question, and therefore the defendant is liable to pay it.

*By the Court.* This case comes before the Court on a motion for a new trial, made by the defendant, on two grounds :

48

*Windsor,*
August,
1822

*Proctor*
*vs.*
Webber.

*Windsor,*
August,
1822.

Proctor
*vs.*
Webber.

1st. That on the trial the Judge admitted the note on which the plaintiffs had declared, to be given in evidence to the Jury, to which the defendant had objected, on account of a variance between the note described in the declaration, and the note produced on trial.

2dly. On an exception to the charge of the Judge, who charged the Jury, that in point of law the Corporation were not made liable by the execution of the note, as it was not under their seal. That a Corporation can be bound only by their seal, or by a vote duly recorded; and, of course, cannot be liable in an action of *assumpsit* on a special contract. And that whenever a person undertakes to bind a Corporation as their agent, either by specialty or simple contract, and fails of rendering the Corporation liable, for want of authority in himself, as their agent, he renders himself liable in his private capacity.

The question arising from the exception to the evidence, the reading of the note to the Jury, is involved in the question arising under the exception to the charge of the Judge. For if the defendant did not, as agent of the Corporation, render them liable to pay the note, he rendered himself liable, and the plaintiffs properly declared on the note according to its legal effect. If by the execution of the note the defendant did render the Corporation liable to pay it, he is not himself personally liable, and the plaintiffs are not entitled to recover. For, as remarked by the plaintiffs' counsel, no distinction can be taken in this respect, between the execution of a specialty and a simple contract. In both cases alike, if the person executing the instrument, as agent, do not bind his principal, he binds himself personally; and the statement in the contract that he is agent, shall be taken as *descriptio personae*, or as surplusage. And as the evidence given to the Jury on the part of the defendant, to prove his agency and authority to bind the Corporation, was by the charge of the Judge withdrawn from the consideration of the Jury, and rendered of no importance in making up their verdict, it is unnecessary to inquire into the sufficiency of that evidence; and the only question presented for the consideration of the Court under the motion for a new trial is, can a Corporation by their authorized agent, make a promissory note or other contract, not under their seal, on which a special action of *assumpsit* will lie against such Corporation?

The Court are unanimously of the opinion, that if the defendant *Windsor,* was, in point of fact, directed by the Corporation, as their agent, August, 1822. and in their behalf, to make and execute promissory notes, for the payment of demands against the Corporation, he was duly author- Proctor, *vs* ised, in point of law, to do so; and the Corporation are liable to Webber. pay the note in question. Consequently, this action cannot be maintained against the defendant.

New trial granted.

Note.—This case having been decided before provision was made for the reporting of the decisions of the Supreme Court, the opinion of the Court *at length* could not be obtained. This is a subject of *regret,* as the question involved in the case is of great importance. It is one of those cases involving the question, shall the English common law prevail, or the American law? and what is the American law *as applicable to the case?* I have therefore thought that it would not be wholly useless or unacceptable to the profession, to subjoin a note, setting forth the rule of the ancient common law as applicable to this case, and containing a number of modern cases decided in the Courts of Great Britain, shewing a progressive alteration of the rule, together with a collection of American cases, shewing that the ancient rule of the common law has been wholly set aside, and a new rule settled, better adapted to the present state and condition of our country. Agreeably to this rule the above case was decided by the Court. See the note at the end of the reports in this volume.